IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NEW YORK AMERICAN WATER COMPANY, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); ANGUS FIRE; THE ANSUL COMPANY; BUCKEYE FIRE EQUIPMENT CO.; BUCKEYE FIRE PROTECTION COMPANY; CHEMGUARD; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS LP; JOHN DOE DEFENDANTS 1-50,**<br><br>Defendants. | Civil No.:<br><br><br><u>**COMPLAINT**</u><br><u>**JURY DEMAND**</u> |

New York American Water Company, Inc. ("NYAW" or "Plaintiff") files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1. NYAW brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of Polyfluoroalkyl substances or "PFAS" chemicals—including but not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoropentanoic acid ("PFPA"), Perfluoroheptanoic acid ("PFHpA"), Pentafluorobenzoic acid ("PFBA"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA") , Perfluorodecacanoic acid ("PFDA"), and Perfluorohexane Sulfonic Acid ("PFHS"), as well as any and all hazardous

chemicals produced by Defendants (collectively referred to herein as "PFAS"), — found in the public water supply systems owned and operated by NYAW throughout the State of New York and in the groundwater that serves as supply sources for those systems. As the manufacturers and sellers of products that contain PFAS compounds, Defendants The 3M Company (f/k/a Minnesota Mining and Manufacturing Co.), Angus Fire, The Ansul Company, Buckeye Fire Equipment Co., Buckeye Fire Protection Company, Chemguard, National Foam, Inc., Tyco Fire Products, LP, and John Doe Defendants 1-50 (collectively "Defendants"), have discharged PFAS into, or are otherwise responsible for PFAS released into, the groundwater that serves as the supply sources for NYAW's public water supply systems.

2. For years, Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals. These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports and military facilities throughout the State of New York.

3. Defendants knew, or should have known, that PFAS and related constituents present unreasonable risks to human health, water quality, and the environment and of the dangers associated with these compounds. Yet, Defendants handled, discharged and were otherwise responsible for the release of PFAS into the environment without sufficient containment or caution. Defendants' acts and omissions resulted in the presence of these compounds in the water sources of NYAW's public supply well systems. As a result of the occurrence of PFAS and related compounds in the environment caused by Defendants' handling of PFAS and products containing PFAS, NYAW has been required to fund sampling and investigation of PFAS contamination, and will be required to implement capital improvements in

the future that will result in ongoing operation and maintenance costs and future damages in order to remove and treat for the presence of PFAS in its public water supply systems.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in this District.

## PLAINTIFF

6. Plaintiff NYAW is a New York corporation with its principal place of business at 60 Brooklyn Avenue, Merrick New York, 11566. NYAW is a direct, wholly owned subsidiary of American Water Works Company, Inc., the largest publicly traded water and wastewater utility company in the United States.

7. NYAW owns and operates seventeen (17) public supply well systems and operates two (2) public supply well systems pursuant to the authorization of the New York State Public Service Commission ("NYSPSC"). NYAW's public water systems serve an estimated one hundred, twenty-five thousand (125,000) customers in communities throughout the State of New York, including Nassau, Orange, Putnam, Sullivan, Ulster, Washington, and Westchester counties.

8. NYAW relies on groundwater aquifers to supply water for its public water systems. The systems include over 100 wells, which feed into over 50 points of entry.

## DEFENDANTS

9. Defendant The 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a Delaware corporation, with its principal place of business located at 3M Center, St. Paul, Minnesota 55133.

10. Through at least 2002, 3M manufactured PFOS for use in AFFF and other products, and it manufactured AFFF that contained PFAS compounds.

11. Defendant Angus Fire ("Angus") is part of Angus International, and has corporate headquarters in Bentham, United Kingdom. Angus Fire maintains a place of business in the United States at 141 Junny Road, Angier, North Carolina 27501.

12. At all times relevant, Angus manufactured fire suppression products, including AFFF that contained PFAS compounds.

13. Defendant The Ansul Company (hereinafter "Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

14. At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

15. Defendant Buckeye Fire Equipment Company ("Buckeye") is a North Carolina corporation, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

16. At all times relevant, Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

17. Chemguard is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

18. At all times relevant, Chemguard manufactured fire suppression products, including AFFF that contained PFAS compounds.

19. National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

20. At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds.

21. Upon information and belief, Defendants John Does 1-50 also manufactured and sold products that contain PFAS compounds. Plaintiff NYAW presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50. NYAW will amend this Complaint to show their true names if and when they are ascertained.

## POLYFLUOROALKYL SUBSTANCES

22. PFAS compounds are a family of manmade chemicals, also known as perfluorochemicals ("PFCs"), that have been used for decades to make products that resist heat, oil, stains, grease and water.

23. In the 1940s and 1950s, 3M began creating PFAS chemicals and incorporating them into their products after recognizing their surfactant properties. Over the years, PFAS chemicals were sold to other companies for use in AFFF and a variety of other products, including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

24. AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world. AFFF is a Class-B

firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

25. AFFF's are synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

26. PFASs are extremely persistent in the environment and resistant to typical environmental degradation processes. In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies. PFASs also have high water solubility (mobility) and low biodegradation (persistence).

27. PFASs, in particular PFOS and PFOA, have been identified as "emerging contaminants" by the EPA. This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

28. PFASs, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

29. Certain PFAS compounds, such as perfluorooctane sulfonate ("PFOS") and PFOA (which is also known as "C8" because it contains eight carbon compounds), have been the focus of the New York Department of Environmental Protection ("NYDEP") and EPA's investigations.

30. United States Environmental Protection Agency ("EPA") studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

31. In January of 2009, the EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data. EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

32. In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure.

33. In February 2019, EPA announced an Action Plan to address PFAS contamination that includes initiating steps to establish federal Maximum Contamination Levels ("MCLs") for PFOA and PFOS in drinking water.

34. In December of 2018, The New York Drinking Water Quality Council ("NYDWQC") proposed that the New York State Department of Health ("NYSDOH") adopt state MCLs of 10 parts per trillion ("ppt") for PFOA and PFOS in drinking water, which would make New York's regulatory standard the strictest in the United States.

35. In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed

to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

36. UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

37. In 2015, NYAW participated in the UCMR 3 sampling for its facilities that serve more than 10,000 people.

38. The results of the UCMR 3 sampling revealed the presence of PFAS compounds in groundwater at various locations throughout New York.

39. Sampling under UCMR 3 used higher reporting limits than would be applicable in light of scientific information and guidance levels developed since that time, which are much lower than those employed in 2008 and 2009.

40. In addition, the UCMR 3 sampling effort did not combine PFAS levels thus not taking into account added effects from the presence of more than one PFAS compound as NYDEP has recognized.

41. While more studies have been conducted, and thus, more is known regarding PFOS and PFOA, all PFAS compounds have generally demonstrated similar characteristics to PFOS and PFOA.

42. Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA and PFOS.

43. The EPA acknowledges that the studies associated with PFAS compounds are ongoing, and as such, the HALs may be adjusted based upon new information.

44. As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

45. Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

46. Defendants' prior knowledge of the adverse impacts from PFAS compounds to human health and the environment amounts to reckless disregard to human health and environmental safety. Nonetheless, Defendants negligently and recklessly manufactured and sold PFAS and products containing PFAS with no warnings or instructions on use or disposal to avoid contamination.

47. Defendants' actions have directly resulted in contamination of a portion of the wells that make up NYAW's water supply system. Because Defendants' PFAS has infiltrated the waters that serve as the source for NYAW's public water supply system, contamination of NYAW's wells is recurring and continuing.

## NYAW WATER SYSTEM IMPROVEMENTS

48. NYAW is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements. NYAW must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

49. As a direct result of Defendants' action, NYAW has had to address PFAS contamination. In doing so, NYAW has conducted and continues to conduct sampling, studies and investigations related to PFAS, which requires funding by NYAW, including costs for its

personnel to supervise the assessments, and costs to develop PFAS treatment scenarios, and costs to analyze available alternatives.

50. NYAW has incurred, and will continue to incur, significant costs, related to PFAS contamination. In addition to sampling and assessment of PFAS contamination in its systems, capital improvements and other system adjustments will be necessary to assure sufficient non-PFAS impacted water supplies. Operation and maintenance measures for these improvements will be ongoing and add further to the costs that NYAW will incur in address Defendants' PFAS contamination.

## **CAUSES OF ACTION**

## **COUNT ONE – STRICT LIABILITY (DEFECTIVE DESIGN)**

51. Plaintiff NYAW hereby incorporates by reference the allegations set forth in paragraphs 1-50 of this Complaint as if they were set forth fully herein.

52. Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, resulting in contamination of the environment, including the groundwater that serves as the water source for Plaintiff's public water supply system, thereby causing damage to Plaintiff.

53. As manufacturers of PFAS-containing products, Defendants had a strict duty not to place into the stream of commerce PFAS compounds that are not reasonably safe and that are unreasonably dangerous in their effect on the environment and the activities and rights of others.

54. Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

55. By causing PFAS contamination and the resulting impact to Plaintiff's public water supply systems, Defendants engaged in marketing products that are not reasonably safe and are unreasonably dangerous, for which they are strictly liable.

56. NYAW has incurred, or will incur, investigation, cleanup, remediation, and removal costs and damages related to PFAS contamination.

## COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)

57. Plaintiff NYAW hereby incorporates by reference the allegations set forth in paragraphs 1-50 of this Complaint as if they were set forth fully herein.

58. Defendants engaged in the design, manufacturing, marketing, and sales of PFAS chemicals and products containing PFAS, which Defendants knew or should have known, would result in contamination of the environment, including the groundwater that serves as the water source for Plaintiff's public water supply systems, thereby causing damage to Plaintiff.

59. Defendants knew or should have known of the adverse impacts the exposure to its PFAS compounds would have on the environment and the activities and rights of others.

60. Defendants knew or should have known of the persistence and high mobility of PFAS in the environment, and the foreseeable risk that their PFAS and PFAS-containing products would be discharged, released, or disposed of in the environment.

61. Defendants failed to provide warnings or instructions sufficient to notify the users of the dangers inherent in their products.

62. Defendants' failure to provide notice or instruction regarding the dangers to human health and the environment rendered Defendants' PFAS and PFAS-containing products unreasonably dangerous for the purposes intended and promoted by Defendants.

63. This failure to warn or adequately instruct regarding the dangers associated with use of these products directly and proximately caused harm to Plaintiff.

## COUNT THREE – NEGLIGENCE

64. Plaintiff NYAW hereby incorporates by reference the allegations set forth in paragraphs 1-50 of this Complaint as if they were set forth fully herein.

65. Defendants had a duty to exercise due or reasonable care in the manufacture, distribution, and use of its PFAS chemicals and PFAS-containing products so as to avoid harm to those who would be foreseeably injured by PFAS environmental contamination.

66. Defendants knew or should have known that their PFAS products would result in the release, discharge, or disposal of PFAS compounds into the environment that would lead to contamination of drinking water supplies and hazards to human health if not treated.

67. By failing to exercise due care in the design, manufacturing, marketing, and sale of PFAS and their PFAS-containing products, Defendants breached their duty to avoid harm to Plaintiff.

68. As a result of Defendants' negligence, Plaintiff NYAW has incurred, investigation costs, and will incur remediation, removal costs and other damages related to PFAS contamination.

69. Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiff.

70. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer damages.

## COUNT FOUR – PRIVATE NUISANCE

71. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-50 of this Complaint as if they were set forth fully herein.

72. Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's use and enjoyment of its public water supply systems and the groundwater sources that supply those systems.

73. The private nuisance created by Defendants is continuing.

74. Defendants have failed, and continue to fail, to abate the private nuisance.

75. As a result of the private nuisance, Plaintiff has suffered, continues to suffer, and will in the future suffer significant harm and damages, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's wells.

76. Defendants knew that their actions and omissions as described herein would cause injury and damage, including the contamination of Plaintiff's public drinking water wells. Defendants' acts and omissions were performed knowingly, willfully, and with oppression, fraud and/or malice. Defendants' promotion of the sales of its PFAS products were undertaken in conscious disregard for the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public, thereby entitling Plaintiff to an award of punitive damages so as to punish Defendants and compensate for the aggravating circumstances sustained by Plaintiff.

## COUNT FIVE – PUBLIC NUISANCE

77. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-50 of this Complaint as if they were set forth fully herein.

78. Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to a clean environment, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

79. Through Defendants' acts and omissions, Defendants' PFAS and PFAS-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff's right to the use of groundwater as a source of potable water, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

80. The public nuisance created by Defendants is continuing.

81. Defendants have failed, and continue to fail, to abate the public nuisance.

82. As a result of the public nuisance, Plaintiff has suffered, continues to suffer, and will in the future suffer significant harm and damages special to Plaintiff and different in kind from those the general public may have suffered, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of PFAS constituents that have and will continue to migrate into Plaintiff's wells, such that Defendants should be required by injunction to abate the nuisances they have created.

## COUNT SIX – TRESPASS

83. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-50 of this Complaint as if they were set forth fully herein.

84. Plaintiff is the owner and is in possession of the wells within its drinking water supply systems that access the groundwater in the state of New York to supply drinking water to

the public.

85. Plaintiff has the rights to use of the groundwater in the state of New York for purposes of supplying drinking water to the public.

86. Plaintiff has not extended permission to Defendants to allow PFAS contamination to enter Plaintiff's water supply wells.

87. Defendants knew or should have known when they marketed their PFAS products that such products had a propensity to infiltrate groundwater aquifers and thereby contaminate Plaintiff's wells and pose a threat to the public drinking waters supplied by Plaintiff.

88. Defendants' actions and omissions each constitute a substantial factor in the contamination of Plaintiff's wells and each Defendant aided and abetted and is jointly responsible for the trespasses and injuries and damages resulting therefrom.

89. Defendants' actions and omissions directly and proximately caused harm to Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff New York American Water ("NYAW") respectfully requests that this Court:

   a. Enter judgment finding Defendants jointly and severally liable for all costs and damages incurred by Plaintiff, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to PFAS contamination; including the reasonable costs of sampling, investigations, and assessment of injury, and destruction or loss resulting from PFAS contamination;

   b. Enter judgment finding Defendants liable for punitive damages;

   c. Enter judgment finding Defendants liable for consequential damages;

d. Enter judgment requiring, via injunction, Defendants to abate the nuisance they have created;

e. Award Plaintiff NYAW costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Award NYAW such other relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

Dated: April 11, 2019
    New York, New York

By: */s/ Frank R. Schirripa*
    Frank R. Schirripa (FS-1960)
    Michael A. Rose (MR-2088)
    **HACH ROSE SCHIRRIPA**
       **& CHEVERIE LLP**
    112 Madison Avenue, 10th Floor
    New York, New York
    (212) 213-8311
    (212) 779-0028 (fax)
    Email: fschirripa@hrsclaw.com
    Email: mr@hachroselaw.com

    T. Roe Frazer II (*pro hac vice pending*)
    **FRAZER PLC**
    1 Burton Hills Boulevard, Suite 215
    Nashville, Tennessee 37215
    (615) 647-0990
    Email: roe@frazer.law

    Frederick T. Kuykendall (*pro hac vice pending*)
    **THE KUYKENDALL GROUP**
    P.O. Box 2129
    Fairhope, AL 36533
    (205) 252-6127
    Email: ftk@thekuykendallgroup.com

    *Attorneys for Plaintiff*